IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:19-CV-14-FL

| | | |
|---|---|---|
| NORTH CAROLINA WILDLIFE FEDERATION, and NO MID-CURRITUCK BRIDGE-CONCERNED CITIZENS AND VISITORS OPPOSED TO THE MID-CURRITUCK BRIDGE, | ) ) ) ) ) | |
| | ) | ORDER |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY ADMINISTRATION; JAMES H. TROGDON, III, in his official capacity as Secretary, North Carolina Department of Transportation; and EDWARD T. PARKER, in his official capacity as Assistant Division Administrator, Federal Highway Administration, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on plaintiffs' motion to complete and supplement the administrative record. (DE 46). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs initiated this action April 23, 2019, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., alleging that defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 et. seq. Particularly, plaintiffs seek judicial review of defendant Federal Highway Administration's ("FHWA") final decision to allow defendant North

Carolina Department of Transportation ("NCDOT") to construct a $600 million toll bridge across the Currituck Outer Banks ("Mid-Currituck Bridge"). Plaintiffs claim that defendants' decision to construct the Mid-Currituck Bridge impermissibly rests upon an arbitrary and capricious analysis of alternatives under NEPA by failing to address funding issues, obscuring the relative merit of the "improving existing roads 2" ("ER2") alternative, failing to account for the growth inducing impact of the Mid-Currituck Bridge, relying upon deficient analysis of the direct impacts to the natural environment, and also relying upon deficient analysis of the indirect and cumulative effects on the environment. Plaintiffs also claim defendants violated NEPA by failing to prepare a supplemental environmental impact statement ("SEIS") in light of new information and changed circumstances.

Pursuant to this court's case management order, the federal defendants served on December 9, 2019, the proposed administrative record. Plaintiffs requested defendant FHWA include in the administrative record 1) omitted pre-2007 documents from prior analyses of the Mid-Currituck Bridge, 2) referenced draft documents or other email attachments, 3) two letters regarding financing of the Mid-Currituck Bridge, and 4) plaintiffs' March 18, 2019, letter and accompanying attachments requesting a SEIS in light of new information and changed circumstances. Plaintiffs also requested that defendant FHWA produce inter-agency or intra-agency emails or provide a log for any documents being withheld based on privilege. After the federal defendants denied plaintiffs' request to include in the administrative record the aforementioned documents, plaintiffs filed the instant motion on March 13, 2020.

# COURT'S DISCUSSION

A.      Standard of Review

In reviewing agency action pursuant to the Administrative Procedure Act ("APA"), "the court shall review the whole record." 5 U.S.C. § 706. Although the APA does not expressly define what constitutes the "whole record . . . review is to be based on the full administrative record that was before the [decisionmaker] at the time he made his decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 107 (1977). Further, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam). "There is a presumption that the record compiled by the agency is the record on which it rested its decision . . . . Accordingly, courts will ordinarily assume that the administrative record is complete and exclusive for purposes of judicial review." Sanitary Bd. of City of Charleston, W. Virginia v. Wheeler, 918 F.3d 324, 334 (4th Cir. 2019) (citing Fla. Light & Power Co. v. Lorion, 470 U.S. 729, 744 (1985)); see Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the [a]dministrative [r]ecord absent clear evidence to the contrary.").

Plaintiffs bear "a special burden of demonstrating that the court should reach beyond the record, either to examine information that should have been before the agency but was not, or to introduce extra-record evidence that the agency actually relied on that was omitted from the administrative record." Wheeler, 918 F.3d at 334 (citing Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989)); see Nat. Audubon Soc. v. Dep't. of Navy, 422 F.3d 174, 188 n.4 (4th Cir. 2005).

> [A] review of the case law reveals that there are three or four circumstances that appear to call for supplementation: (1) to explain technical information or action not adequately explained by the record (e.g., more background needed); (2) to show an agency failed to consider relevant evidence; (3) to show an agency, in bad faith,

3

failed to include certain information in the record; or (4) to demonstrate bad faith in the agency's decision making process.

Pamlico-Tar River Found. v. U.S. Army Corps of Engineers, 329 F. Supp. 2d 600, 609 (E.D.N.C. 2004). Because "a NEPA suit is inherently a challenge to the adequacy of the administrative record, . . . courts generally have been willing to look outside the record when assessing the adequacy of an EIS or a determination that no EIS is necessary." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 201 (4th Cir. 2009) (quoting Webb v. Gorsuch, 699 F.2d 157, 159 n.2 (4th Cir. 1983)); see Nat'l Audubon Soc. v. U.S. Forest Serv., 46 F.3d 1437, 1447 (9th Cir. 1993); Esch, 876 F.2d at 991 (recognizing consideration of extra-record evidence to be appropriate "in cases arising under the National Environmental Policy Act"). Nonetheless, "deviation from the record rule, even in the review of NEPA decisions, is limited" to those instances where "the administrative record is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed action." Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv., 883 F.3d 644, 658 (6th Cir. 2018) (quoting Nat'l Audubon Soc. v. Hoffman, 132 F.3d 7, 15 (2d Cir. 1997)); see Camp, 411 U.S. at 142–43.

B.    Analysis

1.    1995 Alternatives Study Report and 1998 DEIS

Plaintiffs first seek to compel defendants to complete the administrative record by filing the 1995 Alternatives Study Report and 1998 DEIS evaluating the Mid-Currituck Bridge. As plaintiffs point out, these two documents are discussed, referenced, and incorporated into defendants' development of the 2010 statement of purpose and need and preparation of the 2010 DEIS. (See, e.g., MCB0000000608, MCB0000000733, MCB0000001438, MCB0000012148, MCB0000025481, MCB0000023476, MCB0000023482–MCB0000023484). Therefore,

4

plaintiffs present clear evidence that 1995 Alternatives Study Report and 1998 DEIS were directly or indirectly before the agency at the time that it rendered its decision in the instant case.

Defendants argue that the foregoing documents are not properly considered part of the administrative record, and that the best plaintiffs can do "is [c]ite instances in the record they claim and suggest that earlier documents were considered when the NEPA process was restarted." (Def. Resp. (DE 72) at 20–21). Defendant's argument is unpersuasive, where the citations provided by plaintiffs are clear evidence that the 1995 Alternatives Study Report and the 1998 DEIS were relied upon by the agency in the NEPA process currently before the court. Cf. F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009) ("To be sure, the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing position."). Accordingly, defendants are ordered to supplement the administrative record with the 1995 Alternatives Study Report and the 1998 DEIS.

2.      SEIS Request Letter and Attachments

Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). To be considered "final," an agency action must satisfy two conditions: "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." U.S. Army Corps of Engineers v. Hawkes Co., 136 S. Ct. 1807, 1813 (2016) (internal quotation marks omitted) (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)). The burden of identifying a final agency action rests with plaintiffs. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990).

Here, the final agency action that plaintiffs challenge is defendants' "fail[ure] to prepare a SEIS." (Compl. ¶ 226). Such decision was made in the reevaluation report issued March 6, 2019, which concluded "[a] supplemental EIS is not required because there are no substantial changes in the proposed action nor are there significant new circumstances or information relevant to environmental concerns." (MCB0000069492; see MCB0000069478). Under the Bennett factors, the ROD and attached reevaluation report's denial amounts to a final agency action — specifically denial of the need to prepare a SEIS. "Failing to prepare" a SEIS flows from this final agency action. Counsels' subsequent letter and attachments sent to defendant FHWA on March 18, 2019, was not before the agency at the time it made its decision. (SEIS Request Letter (DE 48) at 2–36).

Plaintiffs seek to move the goalposts by arguing defendants' "failure to act" by not responding to counsel's March 18, 2019, letter is the final agency action in this case. However, plaintiffs do not allege that defendant FHWA violated NEPA by failing to respond to the SEIS request letter. Plaintiffs' complaint alleges that defendants failed to prepare a SEIS. (See Compl. ¶¶ 221–27). The failure to prepare a SEIS flows from defendant FHWA's reevaluation report and ROD, not plaintiffs' post-hoc letter and defendant FHWA's non-response to it. See Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis in original) (explaining that a "failure to act" under the APA occurs where "an agency failed to take a discrete agency action that it is required to take"). Plaintiffs' invocation of 5 U.S.C. § 706(2), rather than 5 U.S.C. § 706(1), further demonstrates that defendants' allegedly arbitrary and capricious denial of need for a SEIS, not an unreasonable delay in complying with some unspecified legal obligation to respond to counsels' letter, is the claim before the court. See id. at 64 ("The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or

6

unreasonably delayed.'"); (Compl. ¶ 234). Plaintiffs' SEIS request letter was not before defendant FHWA at the time it rendered its decision, and thus it is not part of the administrative record.

However, at this early stage, where the parties have not yet filed dispositive motions and have not formed through briefing the particular issues requiring resolution, the court cannot conclusively determine whether the SEIS request letter and its attachments fit within one of the four Pamlico-Tar River exceptions allowing extra-record evidence. Where suit is brought citing violations of NEPA, and it appears that the SEIS request letter and its exhibits may raise issues as to whether defendants considered all relevant evidence pertaining to new information and changed circumstances since development of the FEIS, (see compl. ¶ 226), the court allows plaintiffs' motion to supplement the record with the SEIS request letter and its attachments. See Fed. R. Evid. 104(b). The court reminds, however, that such material will not be reviewed to determine the correctness of the decision made. Pamlico-Tar River, 329 F. Supp. 2d at 610.

3. Financing Letters

Plaintiffs seek the inclusion of two letters from counsel regarding funding requests for the Mid-Currituck Bridge under the Transportation Infrastructure Finance and Innovation Act ("TIFIA"). These TIFIA letters were sent to defendant FHWA's TIFIA Joint Program Office in Washington, D.C., on or about May 23, 2011, and March 2, 2012, explaining why plaintiffs believed that the Mid-Currituck Bridge would not be eligible for TIFIA loans and raising environmental concerns regarding the project. (See TIFIA Letters (DE 47-5) at 2, 15–17, 27–29). Plaintiffs contemporaneously raised the issue of whether Mid-Currituck Bridge could receive TIFIA funding in comments on the FEIS, indicating such funding requests had previously been declined. (MCB0000036492–93). Furthermore, the record shows that defendants expressly considered that TIFIA funding "could be used" to fund the Mid-Currituck Bridge, and that "[t]he

7

preliminary Plan of Finance assumes a TIFIA Loan in the amount of $186.9 million." (See, e.g., MCB0000009399; MCB0000011893; MCB0000034958; MCB0000057904–05; MCB0000068807–08; MCB0000068812).

Defendant FHWA admits that it received the TIFIA letters, but argues that "[t]hese letters were not sent in response to the notice and comment period for the NEPA action [p]laintiffs are challenging, and [p]laintiffs offer no evidence to establish that letters addressed to a different office in a different State were considered by the decisionmakers in the 2019 ROD or Re-Evaluation Report." (See Def. Resp. (DE 72) at 21). Defendant FHWA's argument is unpersuasive. Plaintiffs have shown that defendant FHWA considered the Mid-Currituck Bridge's eligibility for TIFIA funding in its ROD and Re-Evaluation Report, and that public comments on the 2012 FEIS raised issues with TIFIA funding that were expounded further in the letters concurrently sent by plaintiffs to defendant FHWA. Furthermore, defendants acknowledge that defendant FHWA employees communicated with each other regarding the project. (See Def. Resp. (DE 72) at 19). This circumstantial evidence is clear enough for the court to conclude the TIFIA letters were before defendant FHWA and considered by the time it issued its decision. Accordingly, plaintiffs' motion to complete the administrative record will be allowed in this part.

4. Predecisional Deliberative Materials

Plaintiffs seek to require defendants to provide "some unspecified number of internal, predecisional materials that were part of the agencies' decision-making processes," including materials prior to 2007.

"Judicial review of agency action should be based on an agency's stated justifications, not the predecisional process that led up to the final, articulated decision." Ad Hoc Metals Coal. v. Whitman, 227 F. Supp. 2d 134, 143 (D.D.C. 2002). "[A]n agency generally may exclude material

8

that reflects internal deliberations." Fund for Animals v. Williams, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). "Requiring the inclusion of deliberative materials in the administrative record would pressure agencies to conduct internal discussions with judicial review in mind, rendering 'agency proceedings . . . useless both to the agency and to the courts.'" Tafas v. Dudas, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) (quoting San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n, 789 F.2d 26, 44-45 (D.C. Cir. 1986)); see also Nat'l Audubon Soc'y, 422 F.3d at 199 ("[T]he evidence we look to . . . does not include . . . the alleged subjective intent of agency personnel divined through selective quotations from email trails."). Accordingly, "[s]uch probing should ordinarily be avoided, and there must be a strong showing of bad faith or improper behavior before such inquiry may be made." Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 212 (4th Cir. 1991) (emphasis added). "[S]ince predecisional documents are irrelevant and therefore not 'otherwise discoverable,' they are not required to be placed on a privilege log." Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019).

Here, plaintiffs have not made a strong showing of bad faith or improper behavior to justify compelling production of pre-decisional deliberative materials, which include documents pertaining to development of the purpose and need statement from 2003 to 2007 and the attachments defendant declined to produce. Having failed to make the necessary showing, those documents are irrelevant and need not be documented in a privilege log.

9

**CONCLUSION**

Plaintiffs' motion to complete and supplement the administrative record (DE 46) is GRANTED IN PART and DENIED IN PART as set forth herein. Pursuant to section II.D.3. of this court's case management order entered August 5, 2019, the parties are DIRECTED to submit a revised proposed briefing schedule for summary judgment within 10 days hereof.

SO ORDERED, this the 26th day of August, 2020.

LOUISE W. FLANAGAN
United States District Judge